# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-1370V

|  |  |
|---|---|
| JOSEPHINE FEITEL,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: March 13, 2024 |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mitchell Jones*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On May 18, 2021, Josephine Feitel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered Guillain-Barré syndrome ("GBS") resulting from an influenza ("flu") vaccine on December 10, 2019. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Respondent conceded entitlement, but the parties were unable to resolve damages informally and I therefore ordered briefing on the matter.[3]

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner filed a damages brief on April 13, 2023 (ECF No. 36). Respondent filed his damages brief on June 12, 2023 (ECF No. 37), and Petitioner replied four days later (ECF No. 38).

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$170,000.00 for actual pain and suffering.**

## I.   Relevant Medical History

On December 10, 2019, Petitioner, then 80 years old, received a flu vaccine at a Walgreens pharmacy in Georgetown, Texas. Ex. 1. Eleven days later (December 21, 2019), Petitioner went to the Emergency Department of Ascension Hospital for treatment of back pain and paresthesia that had begun 14 hours earlier. Ex. 3 at 59. She explained that her entire back side, from her shoulders to her legs, felt numb and tingling since the night before at 9pm. *Id.* She was admitted. *Id.* at 64. The same day, Dr. Sayf Yassin examined Petitioner. Ex. 3 at 68. Dr. Yassin noted that she had an "[u]nclear presentation," and he had discussed concerns for GBS with a neurologist due to her recent flu shot. *Id.*

The next day (December 22, 2019), neurologist Dr. Sara Austin evaluated Petitioner and noted weakness and "completely absent" reflexes. Ex. 3 at 77-78. Petitioner had decreased sensation to touch below the knees, in her hands, and across her back, and was unable to walk. *Id.* at 78. Prior to this, she had been independent, exercised regularly, and drove. *Id.* at 77. Dr. Austin assessed her symptoms as "entirely consistent with a diagnosis of Guillain-Barré syndrome," and ordered IVIG. *Id.* at 78. Dr. Austin noted that the only risk factor Petitioner had was her flu shot two weeks earlier, and it was "possible this is related to that." *Id.* Petitioner received a five-day course of IVIG, as well as Gabapentin, with gradual clinical improvement, and was discharged to an inpatient rehabilitation facility on December 27, 2019. *Id.* at 25.

On arrival at the inpatient rehabilitation facility, Petitioner was noted to be weak in bilateral lower and upper extremities, with significant neuropathic pain throughout her body. Ex. 10 at 1,572. Petitioner remained at the rehabilitation facility from December 27, 2019 until January 24, 2020. *Id.*

Petitioner began at-home physical therapy ("PT") five days after discharge (January 29, 2020). Ex. 5 at 44. She reported no pain. *Id.* at 46. On examination, she had significant bilateral lower extremity weakness, minimal bilateral upper extremity weakness, low endurance, and poor balance. *Id.* at 47-48. Prior to developing GBS, she walked two miles daily without assistance. *Id.* However, at the start of home PT, she was using a walker, needed frequent rest breaks, and needed assistance from another person to leave the home safely. *Id.* at 44.

Petitioner saw her primary care physician, Dr. Rachel McCreary-Fielder, on February 25, 2020, complaining of fatigue. Ex. 9 at 68-69. Her strength and balance were improving, but she easily became tired. *Id.* at 69. On examination, abnormal gait and sensory deficits were noted. *Id.* at 71. Dr. McCreary-Fielder noted that Petitioner continued to work on strength, endurance, and balance that were impacted by being

bedridden in the hospital and rehab facility. *Id*. She had an intermittent burning sensation in her hands and toes consistent with neuropathic pain. *Id*. Petitioner was advised to continue with home health care and PT, and prescribed Gabapentin. *Id*. at 72.

Petitioner continued at-home PT until March 5, 2020, attending ten sessions. Ex. 5 at 44-135. She cancelled one PT session because she was too fatigued from going to a medical appointment a day earlier to participate in PT. *Id*. at 89. At discharge from home-based PT she had met her treatment goals and was moderately independent within the home, but still had weakness, poor balance, and difficulty walking, requiring a walker outside of the home. *Id*. at 113, 124. She needed assistance for all activities and was unable to safely leave the home unattended. *Id*. at 122. She was noted to have a "high fall risk" outside of the home, and instructed to continue PT on an outpatient basis, with someone else driving her. *Id*. at 123. It does not appear that she attended outpatient PT.

Petitioner returned to Dr. McCreary-Fielder two months later (May 5, 2020), reporting that her legs were itching and burning. Ex. 9 at 38. She had taken Gabapentin but found it too sedating. *Id*. at 40. Dr. McCreary-Fielder recommended topical capsaicin and, if that did not help, a low dose of Gabapentin. *Id*. at 44.

Petitioner saw Dr. Austin for a follow up and nerve conduction study on July 2, 2020. Ex 7 at 4. Dr. Austin noted that Petitioner had "made a very good recovery," and her nerve conduction studies were back to normal. *Id*. at 6. Petitioner complained of difficulty with balance. *Id*. She was advised to continue exercising and practicing her balance. *Id*. Over a year later, on October 12, 2021, Petitioner saw Dr. McCreary-Fielder for an annual wellness visit. Ex. 11 at 38. She reported continued left-sided weakness from GBS. *Id*. She was advised to continue working on her strength and balance, and consult with a neurologist. *Id*. at 41.

Two months later (December 17, 2021), Petitioner saw pain management specialist Dr. Amber Whittenburg for pain in her lower back and tailbone. Ex. 16 at 11. She stated that her pain was associated with GBS after a flu shot, and had been present for two years. *Id*. She described it as a "constant aching and burning sensation," and rated her pain as eight out of ten. *Id*. The pain was exacerbated by walking, sitting, lying down and rising from a chair. *Id*. at 11-12. She also had pain in her left knee and generalized weakness in her legs. *Id*. at 12. Dr. Whittenburg recommended a left sacroiliac joint injection, acupuncture, and PT. *Id*. at 17.

Petitioner returned to Dr. McCleary-Fielder on January 11, 2022. Ex. 13 at 8. She planned to sell her house and move to a retirement community that required the Covid-19 vaccine, and was worried about a possible recurrence of GBS. *Id*. She reported continued weakness and pain from GBS, which she was treating with a pain management doctor. *Id*. at 9.

On February 25, 2022, Petitioner saw family medicine Dr. Samuel DeLiberato in her new location to establish care and seek help with lower extremity swelling that started

a week earlier. Ex. 14 at 13. She also reported back aches and a burning sensation in her buttocks. *Id.* Dr. DeLiberato offered Gabapentin, other neuropathic pain medications, PT, or a referral to pain management, but Petitioner declined. *Id.* at 17.

## II.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

4

*Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.     The Parties' Arguments

Petitioner requests an award of $180,000.00 for pain and suffering (the sole component of damages requested in this case). Petitioner's Brief in Support of Damages, filed April 13, 2023, at *1 (ECF No. 36) ("Br."). Petitioner cites *Dillenbeck* (with a past pain and suffering award of $170,000.00), and *Johnson*, *Presley*, and *Devlin* (with past pain and suffering awards of $180,000.00).[5] Pet. at *4-5. Petitioner notes that she was admitted to the hospital for seven days, with a five day course of IVIG, and spent 29 days in an inpatient rehabilitation facility. *Id.* at *6. At discharge from the rehab facility, she was using a walker to ambulate. *Id.* She then did five weeks of in-home PT. *Id.* She continued to suffer residual GBS symptoms including weakness and neuropathic pain through February 2022. *Id.*

Petitioner asserts that her condition fell on the moderate end of severity for a GBS case, with symptoms still present for two and a half years. Pet. at *6. She compares her case to *Johnson*, asserting that she and that petitioner were hospitalized, and both experienced residual symptoms two and a half years after vaccination. *Id.* Petitioner argues that her case is *more* severe than *Johnson* in that Petitioner spent four weeks at an inpatient rehabilitation facility. *Id.* at *7

Respondent proposes the lesser award of $102,500.00. Response to Petitioner's Brief, filed June 12, 2023, at *8 (ECF No. 37) ("Resp."). In support of his proffered amount, Respondent cites *Shankar* and *Dillenbeck*, in which the petitioners were awarded $135,000.00 and $170,000.00, respectively.[6] Resp. at *8-9. But Respondent views Petitioner's clinical course as less severe, and otherwise distinguishable from Petitioner's cited cases. *Id.* Respondent notes that GBS cases run a spectrum, and characterizes Petitioner's clinical course and treatment as falling on the less severe end of the spectrum. *Id.* at *9. Some GBS patients are hospitalized for months, while Petitioner was hospitalized for just one week, with another month of inpatient rehabilitation. *Id.* Petitioner underwent a single round of IVIG, with a good recovery. *Id.* Respondent states that the

---

[5] *Johnson v. Sec'y of Health & Human Servs.*, No. 16-1356Vm 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018); *Presley v. Sec'y of Health & Human Servs.*, No. 17-1888V, 2020 WL 1898856 (Fed, Cl. Spec. Mstr. Mar. 23, 2020); *Dillenbeck v. Sec'y of Health & Human Servs.*, No.17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019), *aff'd in relevant part*, 147 Fed. Cl. 131 (2020); and *Devlin v. Sec'y of Health & Human Servs.*, No.19-0191V, 2020 WL 5512505 (Fed. Cl. Spec. Mstr. Aug. 7, 2020).

[6] *Shankar v. Sec'y of Health & Human Servs.*, No. 19-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022); and *Dillenbeck v. Sec'y of Health & Human Servs.*, No.17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019), *aff'd in relevant part*, 147 Fed. Cl. 131 (2020).

privacy provisions of the Vaccine Act make a true comparison to other cases difficult, but he considers $102,500.00 to be an appropriate award compared to other, more severely injured petitioners.

In reply, Petitioner emphasizes that Respondent has not cited *any* reasoned damages decisions that would support an award of $102,500.00. Petitioner's Reply, filed June 16, 2023, at *1 (ECF No. 38) ("Reply"). Petitioner acknowledges that the petitioner in *Dillenbeck* was hospitalized for two weeks, compared to one week in this case, but notes that unlike *Dillenbeck,* she went to an inpatient rehabilitation facility for 29 days rather than back to home. Reply at *2. Petitioner was using a walker to ambulate at discharge from rehabilitation, and continued to suffer residual GBS symptoms two and a half years after vaccination. *Id.*

### IV.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[7] However, I ultimately base my determination on the circumstances of this case.

*Dillenbeck* is the most comparable case, and while its facts are not wholly consistent with Petitioner's injury, on balance the same award is warranted. Admittedly, Ms. Feitel was hospitalized for a shorter time than the *Dillenbeck* petitioner (seven days versus two weeks). *Dillenbeck*, 2019 WL 4072069, at *3. But Ms. Feitel was inpatient at a rehabilitation facility for 29 days, and required five weeks of home PT thereafter. Both required a walker and live-in care after going home, and even though they improved, they did not return to baseline, with neither able to resume long walks they did prior to their GBS, and both experienced persistent balance problems. *Id.* The *Dillenbeck* petitioner

---

[7] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2024 reveals the median amount awarded to be $171,133.72. The awards in these cases - totaling 364, have typically ranged from $128,645.56 to $256,835.75, representing cases between the first and third quartiles and awards comprised of all categories of compensation – including lost wages. 47 cases include the creation of an annuity to provide for future expenses.

Past pain and suffering amounts awarded in substantive decisions issued in 34 SPU GBS cases range from $92,500.00 to $192,500.00, with an additional case involving annuity payments. The median amount past pain and suffering award in these 35 cases was $165,000.00, with awards falling within the first and third quartiles ranging from $155,000.00 to $180,000.00.

underwent "multiple rounds" of IVIG, while Ms. Feitel was treated with one successful round. *Id*. The *Dillenbeck* petitioner attended outpatient PT, while Ms. Feitel did not. *Id*.

*Shankar* is not comparable. The petitioner in that case appears to have had a slightly longer hospitalization and IVIG course, but shorter time in inpatient rehabilitation. *Shankar*, 2022 WL 2196407, at *2 (seven days of IVIG and over two weeks as an inpatient, of which nine days were for inpatient PT and OT). More importantly, at the *Shankar* petitioner's discharge, she was independent in major life activities including eating, grooming, showering, dressing, and toilet transfers, and was able to walk 1,000 feet independently. *Shankar* at *2. In contrast, even after a month of inpatient rehabilitation and another five weeks of at-home PT, Ms. Feitel was still using a walker, could not leave the home without assistance, and was easily fatigued. Ex. 5 at 113-124.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $170,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.[8]**

**I therefore award Petitioner a lump sum payment in the amount of $170,000.00 representing compensation for pain and suffering, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>

Brian H. Corcoran
Chief Special Master

---

[8] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.